IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:09cr257 |
| | ) | JUDGE HAYNES |
| GREGORY CHARLES KRUG | ) | |

### MEMORANDUM

The United States of America filed a criminal action against defendant Gregory Krug charging him with false declaration under 18 U.S.C. § 1623(a) (Count One), false statement under 18 U.S.C. § 1001(Count Two), and failure to comply with a Court Order under 18 U.S.C. § 401(Count Three).

Before the Court is Defendant's motion to suppress the documentary evidence obtained as a result of the warrantless search of his residence (Docket Entry No. 53), to which the Government has responded (Docket Entry No. 58), and the Defendant has replied (Docket Entry No 65). The Court held a hearing on Defendant's suppression motion on April 23, 2010. For the reasons stated below, Defendant's motion to suppress should be denied.

### A. ANALYSIS OF THE EVIDENCE

Defendant was on supervised release from a separate criminal case in this district presided over by Chief Judge Campbell, case number 3:98CR138 (the "supervised release case"). In connection with the supervised release case, Defendant agreed to certain standard and special conditions of release, including prohibitions on possessing firearms, communicating with certain court personnel, and excessive use of alcohol. On November 14, 2006, the Defendant executed a Waiver of Hearing to Modify Conditions of Probation/Supervised Release and agreed to add a

1

search condition as a condition of supervised release. (Docket Entry No. 58, Attachment 1, Case 3:09cr257; Docket Entry No. 381, Case 3:98cr138). This condition states, in pertinent part:

> "I hereby voluntarily waive my statutory right to a hearing and to assistance of counsel. I also agree to the following modification fo my Conditions of Probation and Supervised release . . .
>
> <u>Gregory Charles Krug, as a special condition of supervised release, shall submit to a search of his person, property, abode, or vehicle, at a reasonable time and in a reasonable manner, by the probation officer.</u>"

<u>Id</u>. (emphasis added). At a hearing on June 25, 2007, Judge Campbell confirmed that "all Conditions of Supervised Release remain in force, including the Standard Conditions and Special Conditions (Docket Entry No. 341) and Modified Condition (Docket Entry No. 381)," the latter of which was the search condition. (Docket Entry No. 58, Attachment 2, Case 3:09cr257; Docket Entry No. 389, Case 3:98cr138).

On August 17, 2007, officers from the United States Probation Office did a home visit of Defendant's residence in connection with the supervised release case. Later that night, the officers returned to the residence and conducted a search without a warrant and seized numerous documents. Defendant's suppression motion arises from this search.

The Court held a suppression hearing on April 23, 2010. Defendant, appearing <u>pro se</u>, testified that he waived his Fourth Amendment rights by agreeing to the search condition in the supervised release case, but only assented in exchange for the United States Probation Office's promise to transfer his supervision to California.[1] Defendant was not transferred to California

---

[1] The contemplated transfer is referenced in the United States Probation Office's request: "On November 6, 2006, this office received a letter from U.S. Probation . . . California, stating her office will tentatively approve Mr. Krug's proposed release plan contingent upon his conditions being modified to include the above noted special condition for a search . . .[.]" (Docket Entry No. 58, Attachment 1, Case 3:09cr257; Docket Entry No. 381, Case 3:98cr138).

2

and he remained on supervised release in this district.

United States Probation Officer Jon Hahn provided the following relevant testimony at the suppression hearing. On the morning of August 17, 2007, the Clerk's Office at the District Court for the Middle District of Tennessee received telephone calls inquiring about Chief Judge Campbell. The calls originated from the Hamilton Inn in Nashville. The Defendant lived at the Hamilton Inn. The United States Probation Office and the United States Marshal's Service began investigating the telephone calls. Based upon the information obtained, at the request of their supervisor, United States Probation Officers John Hahn and Jim Perdue conducted a home inspection of the Defendant in the early afternoon. Defendant was home at the time and complied with the officer's request for a breath test, which revealed a blood-alcohol content of .096%. Hahn observed beer cans and Defendant admitted to consuming beer. Hahn believed that Defendant had consumed an excessive amount of alcohol in violation of his supervised release.

While at the residence, the officers asked Defendant about telephone calls made to the Clerk's Office earlier that day. Defendant admitted that he called the Clerks's Office to determine if Sixth Circuit Judge Merritt was still on the bench. Hahn believed that Defendant had violated his supervised release by communicating with certain prohibited court personnel.

Also during the home visit, Defendant made derogatory statements about Judges Campbell and Merritt relating to the supervised release case and statements about firearms. Defendant also showed the officers photographs of Judge Bauer's residence, a judge involved in another prior case. Hahn observed a telephone book open to the United States Government telephone listings page. Hahn became concerned that Defendant may be planning to harm

3

individuals based upon his fixation on judges, statements about weapons, and alcohol consumption.

After leaving Defendant's residence, Hahn and Perdue spoke to their supervisor, the United States Marshal's Service, and the United States Attorney's Office. Assistant United States Attorney Paul O'Brien advised that he did not believe there was probable cause for a search warrant. As a result, they sought judicial permission to search the residence based upon reasonable suspicion of a supervised release violation. Approval was originally sought from Chief Judge Campbell, who recused himself. Approval was next sought from Magistrate Judge Bryant, who orally approved the request to search on the basis of reasonable suspicion of a supervised release violation.

Officers Hahn and Perdue returned to Defendant's residence later that night to search the residence.[2] Hahn testified that he saw bank accounts held by another person for the Defendant. Hahn testified, in substance, that he immediately recognized the documents to be inconsistent with Defendant's prior representation to the United States Probation Office that he had no money.

At the suppression hearing, the Government introduced twelve color photographs taken during the search of Defendant's residence Exhibit A. The Government also introduced ninety-three pages of documents that were seized as Exhibit B, including Wells Fargo bank statements held by "Goodall W Mc Cullough Jr. For Greg Krug." (e.g. Exhibit B-0017).

### B. CONCLUSIONS OF LAW

Defendant seeks to suppress "any and all documents which the government obtained as a

---

[2] Defendant was arrested at some point prior to the search of the residence.

4

result of its 8/17/2007 search of Room 406 of the Hamilton Inn that is located at 837 Briley Parkway." (Docket Entry No. 53). The Government contends that the search was based upon reasonable suspicion of a supervised release violation and consent. (Docket Entry No. 58, at 7-11). The Government further argues that the seized documents were observed in plain view. (Docket Entry No. 58, at 6).

The Fourth Amendment protects individuals from unreasonable searches and seizures and evidence that stems from such unreasonable search or seizure must be suppressed. See Wong Sun v. United States, 371 U.S. 471, 488 (1963). To be reasonable, searches must ordinarily be based upon probable cause and executed in connection with a search warrant. See id. There exist exceptions to the warrant requirement, including consent. Katz v. United States, 389 U.S. 347, 357-58 (1967).

In United States v. Knights, 534 U.S. 112, 114 (2001), the Supreme Court addressed a search based upon a probation order that expressly authorized searches without a reasonable suspicion requirement. In upholding the search, the Supreme Court stated in relevant part:

> [W]e conclude that the search of Knights was reasonable under our general Fourth Amendment approach of "examining the totality of the circumstances," Ohio v. Robinette, 519 U.S. 33, 39 (1996), with the probation search condition being a salient circumstance.
>
> The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." Wyoming v. Houghton, 526 U.S. 295, 300 (1999). Knights' status as a probationer subject to a search condition informs both sides of that balance. "Probation, like incarceration, is 'a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty.' " Griffin, 483 U.S. at 874 (quoting G. Killinger, H. Kerper, & P. Cromwell, Probation and Parole in the Criminal Justice System 14 (1976)). Probation is "one point ... on a continuum of

possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service." Id. Inherent in the very nature of probation is that probationers "do not enjoy 'the absolute liberty to which every citizen is entitled.' " Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 480 (1972)). Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens.

The judge who sentenced Knights to probation determined that it was necessary to condition the probation on Knights' acceptance of the search provision. It was reasonable to conclude that the search condition would further the two primary goals of probation-rehabilitation and protecting society from future criminal violations. The probation order clearly expressed the search condition and Knights was unambiguously informed of it. The probation condition thus significantly diminished Knights' reasonable expectation of privacy.

In assessing the governmental interest side of the balance, it must be remembered that "the very assumption of the institution of probation" is that the probationer "is more likely than the ordinary citizen to violate the law." Griffin, 483 U.S. at 880.

\* \* \*

We hold that the balance of these considerations requires no more than reasonable suspicion to conduct a search of this probationer's house. The degree of individualized suspicion required of a search is a determination of when there is a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable. See United States v. Cortez, 449 U.S. 411, 418 (1981) (individualized suspicion deals "with probabilities"). Although the Fourth Amendment ordinarily requires the degree of probability embodied in the term "probable cause," a lesser degree satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable. See, e.g., Terry v. Ohio, 392 U.S. 1(1968); United States v. Brignoni-Ponce, 422 U.S. 873 (1975). Those interests warrant a lesser than probable-cause standard here. When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.

\* \* \*

The same circumstances that lead us to conclude that reasonable suspicion is

6

constitutionally sufficient also renders a warrant requirement unnecessary.
Id. at 118-120, 121.

The Government argues that the search was supported by reasonable suspicion of legal wrongdoing, (Docket Entry No. 58, at 9), based upon the following information obtained by the probation officers:

> "[D]efendant had violated the conditions of his supervised release by consuming alcohol in excess, contacting certain court personnel, and possessing firearms, ammunition, or dangerous weapons. This reasonable suspicion derived from a 'particularized and objective basis' that included: (1) defendant's blood-alcohol content of .096% . . .; (2) a male caller from the hotel where defendant was living . . . [to] the clerk's office to inquire about Judge Campbell; (3) defendant's admission that he had called the Clerk's Office; (4) a phone book . . . open to . . . contact information for government offices; and (5) defendant's threatening statements made with respect to various judges . . . [.]"

Id. at 9-10. Moreover, Magistrate Judge Bryant provided verbal approval of the search prior to its execution based upon reasonable suspicion of a supervised release violation. Id. at 10.

The Defendant responds by explaining why he made derogatory comments about Judges Merritt and Campbell, where he obtained photographs of Judge Bauer's residence, and disputing that he said he could "blow a man's head off at a hundred yards with a rifle." (Docket Entry No. 65, at 6-10; Docket Entry No. 58, at 4). Defendant also disputes that the supervised release condition prohibiting contact with certain court personnel applied to contacting the Clerk's Office. (Docket Entry No. 65, at 10-12).

As to the issue of whether Krug gave conditional consent to this search condition for his supervised release, in Knights, the Supreme Court stated: "We need not decide whether Knights' acceptance of the search condition constituted consent in the Schneckloth sense of a complete

waiver of his Fourth Amendment rights, however, because we conclude that the search of Knights was reasonable under our general Fourth Amendment approach of 'examining the totality of the circumstances,' with the probation search condition being a salient circumstance. 534 U.S. at 118 (quoting Ohio v. Robinette, 519 U.S. 33, 39 (1996)). In a word, once the Court entered the search condition in its Order setting the conditions of release, analysis of Krug's lack of consent is unnecessary.

The Court concludes that reasonable suspicion existed given the evidence of the Defendant's violations of one or more conditions of supervised release, including the terms relating to excessive alcohol consumption and contact with prohibited personnel. The search was conducted in a reasonable time and manner, the same day as the telephone inquiry and the home inspection, by a Probation Officer who was aware of Defendant's search condition, and after approval by a Magistrate Judge.

## C. CONCLUSION

For the reasons stated herein, the Defendant's motion to suppress (Docket Entry No. 53) should be denied.

An appropriate Order is filed herewith.

Entered on this the _26th_ day of May, 2010.

WILLIAM J. HAYNES, JR,
United States District Judge